# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 19-752V**
UNPUBLISHED

|  |  |
|---|---|
| SAMUEL N. STOKES, as Personal Representative of the Estate of SALLY STOKES,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: December 17, 2021<br><br>Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Adriana Ruth Teitel, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On May 21, 2019, Sally Stokes filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Ms. Stokes alleged that she suffered a Table Injury – a Shoulder Injury Related to Vaccine Administration ("SIRVA") – as a result of an influenza ("flu") vaccine received on September 11, 2018. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). On October 1, 2020, Ms. Stokes's husband, Samuel N. Stokes, was substituted as Petitioner after Ms. Stokes passed away due to an unrelated cause. ECF No. 33. Although Respondent conceded

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

entitlement, the parties could not agree on damages, so the disputed issues were submitted for an SPU Motions Day.

For the reasons described below, and after holding a brief hearing in this matter, I find that Petitioner is entitled to **$125,000.00**, representing Ms. Stokes's actual pain and suffering, plus **$29.78** representing unreimbursed expenses.

## I.    Procedural Overview

As noted above, the case was initiated in May 2019. On October 15, 2020, Respondent filed a Rule 4(c) Report in which he conceded that Petitioner was entitled to compensation in this case. ECF No. 34. Accordingly, on October 19, 2020, a ruling on entitlement issued finding Petitioner entitled to compensation for Ms. Stokes's SIRVA injury. ECF No. 35.

The parties were subsequently unable to informally resolve the issue of damages, so a briefing schedule was set on June 11, 2021. ECF No. 43. Petitioner filed his brief on August 2, 2021, requesting that I award him $150,000.00 in compensation for Ms. Stokes's past/actual pain and suffering. ECF No. 46 at 5. Conversely, in a brief filed on October 7, 2021, Respondent argued that Petitioner should be awarded only $85,000.00 for past pain and suffering. ECF No. 49 at 9. Petitioner filed a Reply brief on October 21, 2021. ECF No. 50. The parties have otherwise agreed upon an award of $29.78, representing Petitioner's unreimbursed expenses. Informal Communicated dated December 17, 2021.

In November of this year, I informed the parties that this case was appropriate for an expedited hearing and ruling via my "Motions Day" practice, at which time I would decide the disputed damages issues based on all evidence filed to date plus whatever oral argument they wanted to make. ECF No. 51. The parties agreed, and an expedited hearing took place on December 10, 2021. Minute Entry dated December 13, 2021.[3] I orally ruled on Petitioner's damages at that time, and this Decision memorializes that determination.

## II.   Pain and Suffering

### A.  Legal Standard and Prior SIRVA Pain and Suffering Awards

---

[3] Tiffany Greaves appeared on behalf of Petitioner, and Adriana Teitel appeared on behalf of Respondent. The transcript of the December 10, 2021 Hearing in this case was not filed as of the date of this Decision, but my oral ruling is incorporated by reference herein.

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Berge v. Sec'y Health & Hum. Servs.*, No. 19-1474V, 2021 WL 4144999, at *1-3. (Fed. Cl. Spec. Mstr. Aug. 17, 2021).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[4]

## B.  Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Ms. Stokes's awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: all medical records, affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on December 10, 2021. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

For the reasons discussed below, and pursuant to my oral ruling on December 10, 2021 (which is fully adopted herein), I find that $125,000.00 represents a fair and appropriate amount of compensation for Ms. Stokes's past pain and suffering. There are several related bases for my decision.

First, the record establishes that Ms. Stokes's shoulder pain was initially fairly severe, prompting her to seek treatment from an orthopedist quickly - only two weeks following her vaccination, on September 25-26, 2018.[5] Ex. 4 at 32-34; Ex. 7 at 1. Thereafter, she underwent a fairly significant amount of treatment for her injury over a

---

[4] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

[5] The focus however of Ms. Stokes's September 25, 2018 appointment was in regard to her unrelated lower back, spine issues, and knee issues. Ex. 4 at 29-31.

relatively short time period (seven months) to include: two rounds of physical therapy[6], an MRI scan[7], and surgery.[8] Subsequently, there is a six-month gap in Ms. Stokes's treatment followed by a final round of physical therapy.

Second, Ms. Stokes's medical records establish that she suffered a moderately severe injury. Ms. Stokes completed 14 physical therapy sessions[9] between September 27, 2018, and November 21, 2018. Ex. 2 at 10, 54-57. However, her shoulder pain was persistent and severe enough to cause her to seek out, and receive, arthroscopic surgery only a few months after her vaccination on November 29, 2018. At that early date, Ms. Stokes underwent both a repair of her right rotator cuff, and a decompression of her right shoulder. Ex. 5 at 7. Her post-operative diagnoses included: a rotator cuff tear and impingement syndrome. *Id.*

Subsequent to her shoulder surgery, Ms. Stokes initially underwent an additional 32 physical therapy appointments between December 24, 2018 and March 28, 2019. Ex. 2 at 60, 142. Ms. Stokes had a final appointment with her orthopedic surgeon, Anthony S. Unger, MD, on April 8, 2019, four months after her shoulder surgery, at which time she demonstrated on examination "full motion. Good strength. Negative impingement sign. Well-healed scars." Ex. 5 at 11. It was noted that "everything looks fine," that Ms. Stokes's physical therapy was completed, and she was instructed to perform exercises on her own then return to see Dr. Unger in six weeks. *Id.*

Ms. Stokes did not return to her Dr. Unger, or any orthopedist, for further shoulder treatment. However, nearly six months after her final appointment with Dr. Unger, she returned to physical therapy for "[p]ain in right shoulder." Ex. 10 at 1. A history of her injury included that she had right rotator cuff surgery in November 2018 and received physical therapy. It was noted that her "overall ranges and strength are vastly improved, [but] she

---

[6] Ms. Stokes ultimately underwent three rounds of physical therapy for a total of 58 physical therapy sessions. *See* Ex. 2 at 54, 142; Ex. 10 at 33-34.

[7] Ms. Stokes underwent an MRI on October 11, 2018, the impression included: a full thickness tear involving the supraspinatus tendon superimposed on underlying tendinopathy and subacromial subdeltoid bursitis. Ex. 3 at 19.

[8] Ms. Stokes underwent arthroscopic surgery on November 29, 2018. Ex. 5 at 7.

[9] Ms. Stokes's initial round of physical therapy was for both her shoulder pain and her spine (radiculopathy, lumbar region). Ex. 2 at 10. Respondent argues that Ms. Stokes only received treatment for her shoulder at her first three physical therapy appointments. ECF No. 49 at 7. However, while the focus of her later sessions appears to have been her spine, a review of the physical therapy records indicates that at least *some* time was spent addressing her right shoulder pain at her physical therapy sessions. *See, e.g.*, Ex. 2 at 21, 24, 27, 32, 37, 39. For example at Ms. Stokes's fourth physical therapy session on October 9, 2018, the record indicates that the following time was coded or spent addressing her right shoulder: 1) five minutes for manual therapy techniques, 2) six minutes for therapeutic activities, and 3) one minute for therapeutic procedures). Ex. 2 at 21.

still has pain radiating to the forearm, difficulty in crossing arm across the body." Ex. 10 at 1. Ms. Stokes's pain severity level was noted at worst to be 5/10, and 2/10 at best. Ex. 10 at 2. Subsequently, Ms. Stokes completed 12 physical therapy sessions and was discharged on November 26, 2019. Ex. 10 at 33-34. At her penultimate therapy session, Ms. Stokes's physical therapist indicated that she had "full range with cross adduction with some residual symptoms" and that he [b]elieve[s] [her] symptoms arise from sensitive neurodynamics of the radial nerve." Ex. 10 at 27. At discharge, she was noted to have active range of motion within normal limits and was able to independently complete activities of daily living (reaching, vacuuming, etc). Ex. 10 at 28. Ms. Stokes sought no further treatment for her right shoulder. Unfortunately, Ms. Stokes passed away on August 13, 2020 from a condition unrelated to her vaccination – cancer. Exs. 11, 13.

In making my determination, I have also fully considered the sworn affidavits, of both Ms. Stokes and her husband, which describe the pain experienced by Ms. Stokes over the course of her injury, as well as the limitations in her exercise of daily functions (such as dressing, sleeping, preparing meals and doing laundry), work duties, and social activities attributed to her shoulder injury. Exs. 8, 13. Mr. Stokes avers in his affidavit that Ms. Stokes complained of shoulder pain until her death, and that her shoulder injury "made her final days that much more difficult and debilitating." Ex. 13 at 2.

Based upon all of the above, Petitioner has demonstrated entitlement to a significant award for pain and suffering, exceeding what has been recommended by Respondent. However, the requested $150,000.00 sum is higher than is supported by the facts of this case. The parties primarily dispute the total duration of Ms. Stokes's injury. Petitioner asserts Ms. Stokes suffered a severe shoulder injury until she died nearly two years after her vaccination, while Respondent argues that the injury persisted for only seven months, with her final round of physical therapy in the fall of 2019 unrelated to her SIRVA. Specifically, Respondent asserts that having pain outside the shoulder, and clinical evidence of radiculopathy, is not consistent with a Table SIRVA. ECF No. 49 at 8 (citing 42 C.F.R. §100.3(c)(10)(iii), (iv)).

While Petitioner's affidavits and the medical records establish that Ms. Stokes experienced some subsequent shoulder pain and limitations, I find that Ms. Stokes's SIRVA, and her associated pain and suffering, was significantly improved at seven months following her vaccination (the time of her final appointment with Dr. Unger on April 8, 2019), as described above. However, I also find that the total duration of her injury was approximately one year, as the record supports the conclusion that her shoulder pain did return, although not as severely, as evidenced by the final round of physical therapy that she underwent from September 30, 2019 to November 26, 2019. While it appears that Ms. Stokes developed some pain that radiated from her shoulder to outside her shoulder (her forearm) and that some of her later symptoms may have been neurological in nature

(as posited by her physical therapist on November 26, 2019), it is also more likely than not that some of Ms. Stokes's fall 2019 shoulder pain was related to her SIRVA injury for which she underwent surgery less than a year prior. Additionally, I note that (based on my experience adjudicating SIRVA cases) it is not uncommon for petitioners who suffer SIRVA to later develop pain collateral pain in other locations of their upper extremity – and thus that such tertiary pain can be associated with the initial SIRVA even if it is not *itself* direct proof of shoulder pain.

Respondent argues Petitioner should be awarded only $85,000.00 for past pain and suffering, but has offered no reasoned SIRVA decisions as comparables in support of this figure. However, at the December 10, 2021 hearing, Respondent cited the following cases in support of his suggested award: *Martin v. Sec'y of Health & Human Servs.*, No. 19-830V, 2021 WL 2350004 (Fed. Cl. Spec. Mstr. May 5, 2021) (awarding $100,000.00 for actual pain and suffering); *Weed v. Sec'y of Health & Human Servs.*, No. 18-1473V, 2021 WL 1711800 (Fed. Cl. Spec. Mstr. March 30, 2021) (awarding $105,000.00 for actual pain and suffering); *Cates v. Sec'y of Health & Human Servs.*, No. 18-0277V, 2020 WL 3751072 (Fed. Cl. Spec. Mstr. June 5, 2020) (awarding $108,000.00 for actual pain and suffering). While these cases represent reasonable comparables, and all represent higher awards than the $85,000.00 recommended by Respondent, I find the facts of Ms. Stokes's case to be more severe. In particular, I note that Ms. Stokes's underwent considerably more physical therapy – 58 total sessions – than the petitioners in these cases. Additionally, the fact that Ms. Stokes's vaccine injury occurred in between her cancer treatments also underscores the impact it had on her enjoyment of life.[10]

Petitioner asserts this case is comparable, but more severe, than several cases awarding $125,000.00 to $127,500.00 in pain and suffering, citing the following decisions: *Dobbins v. Sec'y Health & Human Servs.*, No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018) (awarding $125,000.00 for actual pain and suffering); *Wallace v. Sec'y of Health & Human Servs.*, No. 16-1472V, 2019 WL 4458393 (Fed. Cl. Spec. Mstr. June 27, 2019) (awarding $125,000.00 for pain and suffering); *Nute v. Sec'y of Health & Human Servs.*, No. 18-0140V, 2019 WL 6125008 (Fed. Cl. Spec. Mstr. Sept. 6, 2019) (awarding $125,000.00 for pain and suffering); and *Rafferty v. Sec'y of Health & Human Servs.*, No. 17-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020) (awarding $127,500.00 for pain and suffering). I find that these cases represent good comparables, despite some individual distinctions. Petitioner also offers as comparables two cases with awards much higher than $150,000.00. *See Reed v. Sec'y of Health & Hum. Servs.*, No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (awarding $160,000.00 for actual pain and suffering); and *Hooper v. Sec'y of Health & Human Servs.*, No. 17-0012V, 2019 WL 1561519 (Fed. Cl. Spec. Mstr. Mar. 20, 2019)

---

[10] Although, Ms. Stokes's cancer was quiescent at the time of her SIRVA injury, re-occurring following the conclusion of her SIRVA treatment, I do find that her SIRVA pain added to her suffering in her final years.

(awarding $185,000.00 for actual pain and suffering). However, I find these cases present SIRVA injuries that are more severe than Ms. Stokes. The sums awarded also exceed the amount demanded by Petitioner herein, but Petitioner has not justified why they reflect the proper range.

Ultimately, I find an award of $125,000.00 most appropriate for the moderate SIRVA injury suffered by Ms. Stokes for the reasons discussed above.

## III.    Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $125,029.78 (representing $125,000.00 in compensation for actual pain and suffering, $29.78 for unreimbursed expenses).** This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this decision.[11]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[11] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.